**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **ELLA LITTLETON** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. TMD 09-27 |
| | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>MEMRANDUM OPINION GRANTING
PLAINTIFF'S ALTERNATIVE MOTION FOR REMAND</u>

Ella Littleton ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § § 401-433, § § 1381-1383(c). Before the Court are Plaintiff's Motion for Summary Judgment (or Remand) (Pl.'s Mot. Summ., ECF No. 14)), Defendant's Motion for Summary Judgment (Def.'s mot. Summ., ECF No. 22) and Plaintiff's letter Reply (Pl.'s Reply, ECF No. 23). No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below**,** Plaintiff's Alternative Motion for Remand is Granted.

**I. Procedural History**

Plaintiff filed her applications for DIB and SSI on April 1, 2002 alleging disability since March 1, 2002 due to hepatitis C, ovarian cyst, abdominal hernias, depression/anxiety/panic

disorder/bipolar disorder and degenerative disc disease. R. at 116, 126, 158, 507. The claims were denied on September 30, 2002. R. at 86-89, 510-12. Plaintiff filed second initial applications on February 21, 2003, R. at 120-22, 513-15 which were denied on May 15, 2003. R. at 90-93, 516-18. Plaintiff filed for reconsideration which were requests denied on December 22, 2003.[1] R. at 99-101, 519-20.

On August 27, 2004, a hearing was held before an administrative law judge ("ALJ") at which Plaintiff, Plaintiff's mother and a vocational expert ("VE") testified. R. at 35-79. Plaintiff was represented by counsel. In a decision dated January 10, 2005 the ALJ denied Plaintiff's request for benefits. R. at 15-26. The Appeals Council denied review on April 17, 2006. R. at 9-12. Thereafter, the case was remanded to the Commissioner by consent on May 15, 2007. R. at 611. The Appeals Council issued a Remand Order dated July 2, 2007, R. at 612-16, and a supplemental (video) hearing was held on December 6, 2007. R. at 574-610. On May 20, 2008, the ALJ again denied Plaintiff's request for benefits. R. at 552-71 On November 8, 2008, the Appeals Council denied review making this action ripe for review. R. at 531-34.

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claims for DIB and SSI using the sequential processes set forth in 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920. At the first step, the ALJ determined Claimant had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ determined that Claimant suffered from the following severe impairments: cervical and lumbar degenerative disc disease, hepatitis C, bipolar disorder and fibromylagia. At step

---

[1] The ALJ noted that there has been no order consolidating the first and second applications. R. at 556. However, all exhibits received in connection with the second applications were admitted in the record. *Id*.

three, the ALJ found that her impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1. The ALJ concluded at step four that Plaintiff is not capable of performing her past relevant work. At step five, the ALJ concluded that given her residual functional capacity ("RFC"), there are jobs that exist in significant numbers in the national economy that Claimant could perform. He concluded that Claimant was not disabled. R. at 552-71.

### III. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

### IV. Discussion

Plaintiff contends that (1) the ALJ failed to properly evaluate whether Claimant met the

mental listings; (2) the ALJ failed to conduct a proper pain analysis; (3) the ALJ failed to consider her mental impairments in combination with her other physical impairments; (4); the ALJ failed to properly support his RFC finding; and (5) the ALJ failed to consider the VE testimony at the second hearing. Pl.'s Mot. Summ., 60-90, ECF No. 14. In addition, Claimant's current counsel incorporates all of the arguments of Claimant's former counsel; namely (6) the ALJ failed to comply with the Remand Order of the Appeals Council; (7) the ALJ should have recused herself from the administrative hearing; (8) the ALJ did not consider certain symptoms and allegations of pain; (9) the ALJ failed to perform a proper step three evaluation as to her musculoskeletal and mental conditions; and (10) the ALJ improperly accepted evidence from a prior VE. R. at 535-49. Pl.'s Mot. Summ., 60.

    A. Listing 12.04

The burden of proof is on Claimant to establish whether her impairment meets or is medically equivalent to the listed impairment. *Harper v. Bowen,* 854 F.2d 678, 679 (4th Cir.1988); *Blalock,* 483 F.2d at 774. When there is "ample evidence in the record to support a determination" that the Claimant's impairment meets or equals one of the listed impairments, the ALJ must identify "the relevant listed impairments" and compare "each of the listed criteria to the evidence of [the claimant's] symptoms." *Cook v. Heckler,* 783 F.2d 1168, 1172-73 (4th Cir.1986). "Under *Cook,* the duty of identification of relevant listed impairments and comparison of symptoms to listing criteria is only triggered if there is ample evidence in the record to support a determination that the Claimant's impairment meets or equals one of the listed impairments. Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the Claimant

4

suffers from that impairment." *Ketcher v. Apfel,* 68 F.Supp.2d 629, 645 (D.Md.1999).

Here, Plaintiff argues that although the ALJ mentioned Listing 12.04, she failed to properly consider it and that Plaintiff met both the B and C criteria of that Listing. Listing 12.04 defines an affective disorder as characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life: it generally involves either depression or elation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (2005). An affective disorder meets Listings level when requirements in both Sections A and B are satisfied, or when the Section C requirements are satisfied.[2] *Id.* Section A factors require: A. Medically documented persistence, either continuous or intermittent, of one of the following: … 3. Bipolar syndrome . . . There is no dispute that Plaintiff meets Section A.

The B factors require that the Bipolar syndrome result in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration.... 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04. Here, the ALJ found that Plaintiff suffered from a bipolar disorder but that she did not satisfy the B requirement of the Listing. Specifically, she determined that Claimant suffered from only mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace and no episodes of decompensation from the alleged onset date. R. at 561.

---

[2] As discussed below, substantial evidence does not support the ALJ's findings with respect to at least two of the four "paragraph B" criteria of Listing 12.04. Accordingly, the matter is remanded on this basis and the Court need not address whether substantial evidence supports the ALJ's findings regarding the remaining "paragraph B'

The Court does not find the ALJ's findings supported by substantial evidence as to Listing 12.04.

With respect to activities of daily living, Plaintiff directs the Court's attention to the ALJ's prior opinion in which the ALJ found that Claimant suffered from a moderate restriction of activities of daily living. R. at 21. Even if the Court were to credit the ALJ's prior finding that Plaintiff experienced moderate restriction of activities of daily living, the Listing would still not be satisfied since it requires marked restriction in at least two of the categories. Plaintiff further argues, however, that the evidence supports a marked restriction in activities of daily living. Plaintiff Mem. at 62-66. Plaintiff cites evidence which is based not only on her own testimony and in responses on Daily Activities Questionnaires, *See, e.g.* R. at147-152, but also medical evidence in the record including the opinions of Claimant's treating psychiatrist, Dr. Phillis Bogard, and consultative examiner, Eva Anderson, PhD. The ALJ rejected these opinions; and for the reasons discussed below, the Court finds that that rejection is not supported by substantial evidence.

Claimant was treated by Dr. Bogard and Maureen Vilkas, R.N., therapist of Delmarva Family Sources, beginning on October 31, 2002. In January, 2005, Dr. Bogard indicated that Plaintiff had marked restrictions of daily living activities and a GAF of 45. R. at 654. The ALJ specifically acknowledged Dr. Bogard's opinion in her decision but rejected it as inconsistent with Dr. Bogard's own treatment notes which the ALJ interpreted as reflective of mental examinations within normal limits. R. at 567. The ALJ further noted that Dr. Bogard's opinion

---

criteria or the "paragraph C" criteria.

was inconsistent with Claimant's GAF scores which were generally within a range indicating mild to moderate limitations. R. at 567.

The Court does not find the reasons cited by the ALJ to reject Dr. Bogard's opinion persuasive. The ALJ gave more weight to the statements Claimant made to her physicians than to her self-serving statements at the hearing. R. at 565. Although the ALJ's credibility determination is entitled to great deference, the Court does not find the ALJ's selective citation to evidence in the record in support of only a mild restriction of activities of daily living supported by substantial evidence. For example, the ALJ noted that Claimant informed Dr. Anderson that she is independent in caring for her personal needs, that she straightens up, cooks dinner, takes care of her cat, reads books and watches TV. R. at 561 *citing* R. at 459-69. However, Dr, Anderson specifically reported that Claimant did not perform these activities (apart from perhaps her personal care) on an independent basis but depended on assistance from family members. R. at 465. Dr. Anderson also stated that Claimant remains at home which she considers to be her only safe place and that she is reluctant to leave home, limited in employment, socialization and daily routines. R. at 465. She depends on her mother to drive her places and to shop with her. *Id.* Therefore, while the ALJ may have been entitled to lend more weight to statements Claimant made to doctors over her own testimony, she cannot simply ignore other statements made to doctors which favor a more restrictive finding.

The ALJ also noted that while Claimant testified that she had a history of suicide attempts and suicidal thoughts and auditory hallucinations, she repeatedly denied suicidal thoughts when she met with physicians. R. at 565. While the Court does not dispute the ALJ's finding in this regard, the ALJ seemingly puts no weight on other evidence in the record which

7

demonstrates that Claimant repeatedly complained to her physicians of hearing voices and indicated past suicide attempts. *See, e.g.*, R. at 283-85, 393. For example, treatment notes from Dr. Zweig indicate that Claimant attempted suicide in 1982 and 1998. R. at 276. Dr. Harkhani who saw Claimant at the request of Disability Determination Services noted that Claimant had "three psychiatric hospitalizations . . .She overdosed on medication. She also hit her car in a tree to kill herself." R. at 797. Indeed, the ALJ acknowledged that she was admitted to Pennsylvania Regional Medical Center on July 5, 2004 with a diagnosis of changed mental status from overdosing on benzodiazepines. R. at 452. Medical reports from Delmarva Family Resources indicate Claimant was having paranoid thoughts and hallucinations. R. at 422. In sum, the Court cannot conclude that the ALJ's findings regarding Plaintiff's limitations in daily activities are supported by substantial evidence.

With respect to social functioning, Plaintiff also argues that she did not suffer from only moderate restrictions but from marked restrictions in this area. In support of her finding in this area, the ALJ found significant that Claimant is able to go to AA meetings, goes shopping with her mother and visits with family members. She also recognized that when evaluated by Dr. Anderson, she reported that Claimant was cooperative, related adequately and expressed herself well. R. at 459-69.

Plaintiff cites to an abundance of evidence in the record which not only includes her own statements at the hearing and in questionnaires, but also the findings of multiple doctors. For example, Dr. Harkhani indicated that Claimant met the criteria for major depression, recurrent as well as borderline multiple personality disorder. R. at 205. He documented her feelings of sadness and depression and difficulty sleeping as well as feeling hopeless and

anxious. R. at 203. In her opinion, the ALJ acknowledged these findings, R. at 558, but does not indicate how these findings support her finding of moderate difficulty in social functioning. In addition, psychologist John Zweig indicated Claimant would stay in bed 2 – 3 days in a row and would experience agoraphobia, depression, major outbursts and mood changes. R. at 276. While the ALJ mentions that Claimant saw Dr. Zweig in 2002, R. at 558, she does not evaluate his findings and appointment evaluations but only indicates that he noted no side effects from medications. R. at 279, 565.

Additionally, Dr. Bogard and Dr. Anderson both indicated marked restrictions in categories within social functioning. Dr. Bogard indicated that Claimant was markedly limited in her ability to interact appropriately with the public, her ability to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. at 392, 654. Dr. Bogard opined that she experiences rapid cycling and major depressive symptoms and auditory hallucinations, daily severe panic attacks, and paranoia when confronted with anxiety-provoking situations. R. at 393. Progress notes from Dr. Bogard indicate that she treated Claimant for mental depression and panic attacks in 2004. R. at 415-21. During this time, she presented with a labile and sad affect, a sad mood, agitated psychomotor activity and racing thoughts. R. at 415. Her lithium medication was increased and it was also noted that she took Zyprexa and Zydis. *Id.* Although progress notes indicated she was doing better, she reported hearing voices and whispers at night, R. at 419 and that she wanted to fall asleep and not wake up. R. at 419 She subsequently presented again agitated and reported seeing shadow people and hearing voices. R. at 420. Dr.

9

Anderson indicated marked restrictions in all areas related to ability to respond appropriately to the public, supervisors, co-workers, and work pressures in a work environment. R. at 468.

The Court finds that these findings weigh in favor of a marked restriction in maintaining social functioning. The Court has thoroughly reviewed the ALJ's reasons for rejecting these opinions and finds that her findings are not supported by substantial evidence. While the ALJ cites the extensive records from Delmarva Family Resources as support for her position that Claimant had "mostly normal mental status examinations", R. at 568, those records indicate mood swings and hearing auditory whispers. R. at 283-85. Claimant received individual and group psychotherapy from December 2, 2002 through December 31, 2003, R. at 325-38. She often presented with anxious mood, R. at 325, 326. The records indicate depressed mood, confused, feeling disconnected and out of control, agitated, anxiety attacks, overwhelmed, mood swings and panic attacks. R. at 287. Progress notes indicate racing thoughts and paranoia to the point of panic. R. at 285. On one occasion, Claimant became confused about her medication and started pacing. R, at 289. She experienced waves of depression. *Id*. She complained to physicians that she gets paranoid when she gets upset and that she goes through periods of rage. R. at 290-91. In addition, as mentioned above, psychologist John Zweig indicated Claimant would stay in bed 2 – 3 days in a row and would experience agoraphobia, depression, major outbursts and mood changes. R. at 276. Dr. Zweig also reported that Plaintiff experienced poor sleep, depressed mood, major outbursts, mood changes, feeling overwhelmed, periods of labile mood, anxious mood, and dislike of being touched/hugged. He also indicated that Plaintiff had some compulsive disorder-like symptoms. R. at 276. The ALJ does not indicate what weight, if any, she affords this evidence.

With respect to Dr. Anderson, the ALJ did not ignore these findings but gave specific reasons for rejecting them. However, these reasons are also not supported by substantial evidence. For example, although the ALJ noted that Dr. Anderson's assessment seemed to be based solely on Claimant's subjective complaints, the ALJ further indicated that it was not supported by Dr. Anderson's own narrative report which indicated essentially normal clinical findings on mental status examination. R. at 568. However, although Dr. Anderson noted Claimant related adequately and expressed herself well verbally, R. at 460, 568, Dr. Anderson described her as depressed and a flat affect. R. at 460. Dr. Anderson indicated mood swings, psychotic episodes as reported by Claimant and verified bin psychiatric reports. R. at 468. The ALJ also found that Dr. Anderson's assessment of Claimant's GAF score of 45 to be completely at odds with Claimant's presentation at multiple psychiatric evaluations reflected in progress notes of Dr. Harkhani, Dr. Bogard and Dr. Baral. R. at 568. While other GAF scores are certainly in the mild or moderate range, *e.g.*, Dr. Harkhani's assessment of a GAF of 60 (R. at 205, 4/1/02) and Dr. Bogart's *initial* assessment of 70, (R. at 302, 10/31/02), the record also indicates that Dr. Bogard assessed a GAF score of 40 in July, 2003, (R. at 287) and 55 in January, 2004. R. at 424. Additionally, in October, 2004, consultative examiner Dr. Anderson indicated a GAF of 45. R. at 462. Indeed, what this demonstrates is an overall deterioration in Plaintiff's GAF score over time.

The Court also notes that the ALJ credited the findings of certain non-examining, non-treating state agency consultants in finding moderate limitations in the categories discussed above. The Court has reviewed the record and finds that based on the evidence discussed above,

11

the ALJ's finding to give greater weight to these opinion is not supported by substantial evidence.[3]

### V. Conclusion

Based on the foregoing, Plaintiff's Motion for Remand is GRANTED. A separate order shall issue.

Date:   November 4, 2010

_____/s/_____
THOMAS M. DIGIROLAMO
United States Magistrate Judge

Copies to:
Lawrence P. Demuth, Esq.
Mignini & Raab, LLP
2015 Emmorton Rd.
Bel Air, MD 21015

Allen F. Loucks
Assistant United States Attorney
6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692

---

[3] As mentioned above, Plaintiff asserts a host of other reasons which she asserts justifies a reversal or remand in this matter. The Court does not find a reversal is justified; and because the Court remands the matter on the issue of mental disability, the Court need not address the other issues raised. *See also* n. 2.